Dale M. Cendali
Joshua L. Simmons
Megan L. McKeown
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
megan.mckeown@kirkland.com

*Attorneys for Plaintiff Take-Two Interactive Software, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAKE-TWO INTERACTIVE SOFTWARE, INC.,<br><br>Plaintiff,<br><br>- against -<br><br>JHONNY PEREZ,<br><br>Defendant. | CASE NO. 18-cv-07658 (PKC) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF TAKE-TWO INTERACTIVE SOFTWARE, INC.'S**
**<u>MOTION FOR DEFAULT JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................... 1

FACTUAL BACKGROUND .................................................................................. 2

    I.      TAKE-TWO ................................................................................... 2

    II.     DEFENDANT'S INFRINGING PROGRAM ...................................... 3

    III.    DEFENDANT'S DEFAULT ............................................................. 4

ARGUMENT ........................................................................................................... 5

    I.      THIS COURT HAS JURISDICTION OVER TAKE-TWO'S CLAIMS .............. 5

    II.     DEFAULT JUDGMENT SHOULD BE AWARDED ......................................... 6

            A.     Take-Two's Well-Pleaded Complaint Establishes Defendant's Direct and Contributory Copyright Infringement ....................................... 6

            B.     Take-Two's Well-Pleaded Complaint Establishes Defendant's Liability for Breach of Contract and Tortious Interference With Contract .................................................................................................... 9

    III.    DEFENDANT SHOULD BE PERMANENTLY ENJOINED ........................... 11

            A.     Success on the Merits.................................................................................. 12

            B.     Take-Two Has Been Irreparably Harmed.................................................. 12

            C.     The Balance of Hardships Favors Take-Two ........................................... 15

            D.     The Public Interest Will be Served by the Issuance of an Injunction....... 17

    IV.    STATUTORY DAMAGES FOR DEFENDANT'S COPYRIGHT INFRINGEMENT SHOULD BE AWARDED.................................................. 18

    V.     TAKE-TWO'S ATTORNEY'S FEES SHOULD BE AWARDED.................... 23

CONCLUSION ..................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adv. Access v. Content Sys. Licensing Adm'r, LLC v. Tao*,
689 F. App'x 661 (2d Cir. 2017) ....................................................................14, 15

*Am. Bd. of Internal Med. v. Mittman*,
No. 08 Civ. 929, 2010 WL 11520544 (C.D. Cal. Dec. 6, 2010) ...........................23

*Anderson v. YARP Rest., Inc.*,
No. 94 Civ. 7543, 1997 WL 47785 (S.D.N.Y. Feb. 6, 1997) ................................25

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
522 F.3d 182 (2d Cir. 2008) ...................................................................................25

*Arista Records LLC v. Usenet.com, Inc.*,
No. 07 Civ 8822, 2010 WL 3629688 (S.D.N.Y. Feb. 2, 2010) ........................21, 22

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
931 F. Supp. 2d 537 (S.D.N.Y. 2013)........................................................................6

*Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*,
672 F.2d 607 (7th Cir. 1982) ...................................................................................16

*Blanchard v. Bergeron*,
489 U.S. 87 (1989)....................................................................................................24

*Blizzard Entm't, Inc. v. Vankuipers*,
No. 10 Civ. 1495, 2011 WL 13225129 (C.D. Cal. July 11, 2011) .........................23

*Brighton Collectibles, LLC v. IPPO Jewelry Corp.*,
No. 16 Civ. 06065, 2017 WL 7833608 (C.D. Cal. Feb. 22, 2017).........................23

*Broad. Music, Inc. v. The Living Room Steak House, Inc.*,
No. 14 Civ. 6298, 2016 WL 756567 (E.D.N.Y. Feb. 26, 2016).............................20

*Broad. Music, Inc. v. Pamdh Enterprises, Inc.*,
No. 13 Civ. 2255, 2014 WL 2781846 (S.D.N.Y. June 19, 2014).....................23, 24

*Broad. Music, Inc. v. Prana Hosp., Inc.*,
158 F. Supp. 3d 184 (S.D.N.Y. 2016)................................................................13, 15

*Broad. Music, Inc. v. Wexford INR LLC*,
No. 12 Civ. 1253, 2014 WL 4626454 (N.D.N.Y. Sept. 15, 2014) ....................20, 21

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*,
　　150 F.3d 132 (2d Cir. 1998).................................................................6, 7

*City of Burlington v. Dague*,
　　505 U.S. 557 (1992)...............................................................................24

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
　　645 F.3d 114 (2d Cir. 2011)...........................................................2, 5, 6

*DisputeSuite.com, LLC v. Credit Umbrella Inc.*,
　　No. 14 Civ. 6340, 2016 WL 6662722 (C.D. Cal. Apr. 25, 2016)...........23

*Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*,
　　307 F.3d 197, 208 (3d Cir. 2002)............................................................7

*Dweck v. Amadi*,
　　No. 10 Civ. 2577, 2011 WL 3809907 (S.D.N.Y. July 26, 2011) .....................19, 21

*Elec. Creations Corp. v. Gigahertz, Inc.*,
　　No. 12 Civ. 1423, 2013 WL 3229125 (N.D.N.Y. June 25, 2013) ..................22, 23

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
　　844 F.3d 79 (2d Cir. 2016).......................................................................9

*Entral Grp. Int'l, LLC v. Honey Cafe on 5th, Inc.*,
　　No. 05 Civ. 2290, 2006 WL 3694584 (E.D.N.Y. Dec. 14, 2006) ...........22

*Fogerty v. Fantasy, Inc.*,
　　510 U.S. 517 (1994).................................................................................23

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*,
　　826 F. Supp. 2d 619 (S.D.N.Y. 2011)........................................... *passim*

*Ideavillage Prod. Corp. v. Bling Boutique Store*,
　　No. 16 Civ. 9039, 2018 WL 3559085 (S.D.N.Y. July 24, 2018) ...........13

*Island Software & Comput. v. Microsoft*,
　　413 F.3d 257 (2d Cir. 2005).....................................................................6

*John Wiley & Sons, Inc. v. Williams*,
　　No. 12 Civ. 0079, 2012 WL 5438917 (S.D.N.Y. Nov. 5, 2012) ...........19

*Jordan Mozer & Assocs., Ltd. v. Starck*,
　　No. 13 Civ. 1181, 2014 WL 1327960 (S.D.N.Y. Apr. 3, 2014).......... *passim*

*Kepner-Tregoe, Inc. v. Vroom*,
　　186 F.3d 283 (2d Cir. 1999).....................................................................23

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   136 S.Ct. 1979 (1975)............................................................................17

*Kurt S. Alder, Inc. v. World Bazaars, Inc.*,
   No. 95 Civ 5610, 1995 WL 457991 (S.D.N.Y. 1995) ...........................18

*Lions Gate Films Inc. v. Saleh*,
   No. 214 Civ. 06033, 2016 WL 6822748 (C.D. Cal. Mar. 24, 2016) ......23

*MAI Sys. Corp. v. Peak Computer, Inc.*,
   991 F.2d 511 (9th Cir. 1993) ...................................................................8

*McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*,
   323 F. Supp. 3d 488 (S.D.N.Y. 2018)...........................................9, 12, 13

*MDM Grp. Assocs., Inc. v. L.A. Real Estate*,
   No. 10 Civ. 0234, 2010 WL 5239250 (S.D. Ala. Dec. 14, 2010)...........23

*Micro Star v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998) ..................................................................7

*Midway Mfg. Co. v. Artic Int'l, Inc.*,
   547 F. Supp. 999 (N.D. Ill. 1982) .....................................13, 14, 17, 18

*Midway Mfg. Co. v. Artic Int'l, Inc.*,
   704 F.2d 1009 (7th Cir. 1983) ..................................................................7

*MPD Accessories B.V. v. Urban Outfitters*,
   No. 12 Civ. 6501, 2014 WL 2440683 (S.D.N.Y. May 30, 2014)......14, 15

*MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*,
   No. 16 Civ. 8103, 2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017) ...........25

*Muench Photography, Inc. v. McGraw-Hill Cos.*,
   No. 12 Civ. 6595, 2013 WL 5372785 (S.D.N.Y. Aug. 15, 2013) ...........10

*New York v. Green*,
   420 F.3d 99 (2d Cir. 2005).........................................................................5

*Pearson Educ., Inc. v. Nugroho*,
   No. 08 Civ. 8034, 2009 WL 3429610 (S.D.N.Y. Oct. 27, 2009) ...........21

*Regeneron Pharm., Inc. v. Merus N.V.*,
   No. 14 Civ. 1650, 2018 WL 3425013 (S.D.N.Y. June 25, 2018)......24, 25

*Richard Feiner and Co., Inc. v. Passport Int'l Prods., Inc.*,
   No. 97 Civ. 9144, 1998 WL 437157 (S.D.N.Y. July 31, 1998) ..............18

*Rovio Entm't Ltd. v. Allstar Vending Ltd.*,
    97 F. Supp. 3d 536 (S.D.N.Y. 2015)............................................................16

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)..................................................................12, 15

*Sands v. Hologram USA Networks, Inc.*,
    No. 17 Civ. 09692, slip op. (S.D.N.Y. Oct. 1, 2018)..............................23

*Schmid, Inc. v. Zucker's Gifts, Inc.*,
    766 F. Supp. 118 (S.D.N.Y. 1991)...........................................................11

*Scholz Design, Inc. v. Sard Custom Homes, LLC*,
    691 F.3d 182 (2d Cir. 2012).........................................................................6

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,
    642 F. Supp. 2d 167 (S.D.N.Y. 2009).......................................................16

*Take-Two Interactive Software, Inc. v. Zipperer*,
    No. 18 Civ. 2608, 2018 WL 4347796 (S.D.N.Y. Aug. 16, 2018) ................... *passim*

*Tecnimed SRL v. Kidz-Med, Inc.*,
    763 F. Supp. 2d 395 (S.D.N.Y. 2011).......................................................15

*Tu v. TAD Sys. Tech. Inc.*,
    No. 08 Civ. 3822, 2009 WL 2905780 (E.D.N.Y. Sept. 10, 2009)...................21, 22

*U2 Home Entm't, Inc. v. Fu Shun Wang*,
    482 F. Supp. 2d 314 (E.D.N.Y. 2007) ......................................................11

*Ullmannglass v. Oneida, Ltd.*,
    86 A.D.3d 827, 927 N.Y.S.2d 702 (3d Dep't 2011).........................10, 11

*Vernor v. Autodesk, Inc.*,
    621 F.3d 1102 (9th Cir. 2010) ..................................................................8, 9

*Warner Bros. Entm't v. RDR Books*,
    575 F. Supp. 2d 513 (S.D.N.Y. 2008).......................................................17

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008)........................................................................................16

*WPIX, Inc. v. ivi, Inc.*,
    691 F.3d 275 (2d Cir. 2012)................................................................ *passim*

**Statutes**

17 U.S.C. § 106.................................................................................................6, 7

17 U.S.C. § 410(c) ...................................................................................................6

17 U.S.C. § 502(a) .................................................................................................11

17 U.S.C. § 504(c) ............................................................................................18, 19

17 U.S.C. § 505 ......................................................................................................23

28 U.S.C. § 1331 .....................................................................................................5

28 U.S.C. § 1338 .....................................................................................................5

28 U.S.C. § 1367(a) .................................................................................................5

**Rules**

Fed. R. Civ. P. 55 ....................................................................................................5

Local Rule 55.2(b) ...................................................................................................5

Plaintiff Take-Two Interactive Software, Inc. ("Take-Two") respectfully submits this memorandum of law in support of its motion for default judgment against Defendant Jhonny Perez ("Defendant").

## INTRODUCTION

In a transparent attempt to profit at Take-Two's expense, Defendant developed and sold a software program for cheating in and manipulating Take-Two's *Grand Theft Auto V* video game ("GTAV") and its multiplayer feature *Grand Theft Auto Online* ("GTAO") to the detriment of Take-Two and those that fairly play its games.  In essence, Defendant is free riding on Take-Two's intellectual property to sell a commercial product that interferes with the carefully orchestrated and balanced gameplay that Take-Two created for its players.  Take-Two thus brought this lawsuit to vindicate its rights and asserted claims of direct and contributory copyright infringement, breach of contract, and tortious interference with contract.  Defendant has not appeared in this case, thereby defaulting.  Take-Two thus brings this motion.

Defendant's software program violates Take-Two's copyrights for two reasons.  First, Defendant's program creates an unauthorized altered, derivative version of GTAV that added new features and game elements to the GTAO multiplayer feature.  Second, Defendant is liable for copyright infringement for the independent reason that a license from Take-Two is required to play GTAV.  Because use of Defendant's program violates the licensing conditions in Take-Two's End User License Agreement ("User Agreement"), playing GTAV after having violated those terms is no longer licensed and, thus, also is an infringement.  Defendant is liable directly for his own actions and contributorily for the infringements of his programs' users.  In *Take-Two Interactive Software, Inc. v. Zipperer*—an on-point case where Take-Two was suing another defendant under the same theories for creating a similar infringing program—the court issued a preliminary injunction finding that Take-Two established a likelihood of success on the merits

- 1 -

that the defendant "infringed [Take-Two's] copyright in [those] two ways." No. 18 Civ. 2608, 2018 WL 4347796, at *8 (S.D.N.Y. Aug. 16, 2018).

Defendant also is liable for breach of contract as his conduct violates Take-Two's User Agreement's prohibitions on (i) creating derivative works based on Take-Two's games, (ii) disrupting and inhibiting others from using and enjoying GTAV, and (iii) cheating in connection with the online features of the game. Defendant is not only liable for his own breaches but also for tortiously interfering with Take-Two's contracts with its players because he intentionally caused other players' breach of Take-Two's User Agreement when he sold and distributed his program to those players for use in violation of Take-Two's User Agreement. In *Zipperer*, the court denied a motion to dismiss Take-Two's tortious interference with contract claim based on similar facts, finding that the defendant could be liable for "induc[ing] or intentionally procur[ing] other players' breach of the [U]ser [A]greement." *Id.* at *6. Accordingly, Take-Two respectfully requests that a default judgment be entered against Defendant. In addition, Take-Two seeks a permanent injunction, $150,000 in statutory damages, and attorney's fees for Defendant's willful infringement, consistent with typical default judgment remedies in copyright actions.

## **FACTUAL BACKGROUND**[1]

## I.    **TAKE-TWO**

Take-Two is the developer and publisher of best-selling video game software, including GTAV and its multiplayer game feature *GTAO*. Compl. (Dkt. No. 1) ¶ 23. GTAV is widely recognized as one of the most popular and innovative games available on the market, and Take-

---

[1]    On a default judgment motion, all factual allegations of the complaint, except those pertaining to the amount of damages, must be accepted as true. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint.").

Two has earned numerous awards both in the United States and abroad as a result.  *Id.* ¶ 23.  It is a game that was the product of Take-Two's skills, resources, and creative energies, and is of great value to Take-Two.  *Id.* ¶ 28.

GTAO is a free game offering that complements GTAV and is regularly updated with new content via the Internet.  Declaration of David Andrews, dated December 4, 2018 ("Andrews Decl.") ¶ 9.  GTAO is played in the same virtual world as the main GTAV single player game, but up to 30 players can interact in the same space at the same time.  *Id.* ¶ 2.  This "free to play" model is supported by sales of virtual currency to the players who use it to purchase in-game items.  *Id.* ¶ 9; Compl. ¶ 37.

GTAV and GTAO are protected by Take-Two's copyrights, all of which are solely owned by Take-Two.  Compl. ¶¶ 25–27, 29.  GTAV and GTAO also are protected by the terms of Take-Two's User Agreement, to which all users of GTAV and GTAO, including Defendant, must affirmatively assent.  *Id.* ¶ 11.  The User Agreement makes clear that permission to use GTAV and GTAO is conditioned on users agreeing (1) "not to . . . prepare derivative works based on, or otherwise modify the Software, in whole or in part," (2) "not to  . . . restrict or inhibit any other user from using and enjoying any online features of the Software," and (3) "not to . . . cheat or utilize any unauthorized robot, spider, or other program in connection with any online features of the Software."  Compl. ¶ 30.

## II.   DEFENDANT'S INFRINGING PROGRAM

Defendant, acting in concert with individuals in Europe, created, distributed, and/or maintained a program called "Elusive," which is a cheating or "griefing" program for the GTAO multiplayer feature of GTAV (the "Infringing Program").  Compl. ¶ 1.  The Infringing Program may be used to enable the player using it to cheat or to "grief" another player by using the program to interfere with the second player's gameplay experience.  *Id*. ¶¶ 1–2; Andrews Decl. ¶

4.   The Infringing Program allows users to perform unauthorized actions in the game, Compl. ¶
1, including without limitation (i) causing players to teleport, (ii) creating game objects such as
vehicles and cash bags, (iii) creating game "powers", such as causing the player to be invincible,
(iv) the creation of virtual currency, (v) granting access to weapons and ammunition, and (vi)
granting reputation points.  Andrews Decl. ¶ 4.   These actions can be used to change the game
for the user of the program and other players who do not have the program installed.  Compl. ¶ 1.

To acquire Elusive's bundled cheating tools and features, users could purchase Elusive's
unauthorized features at different price ranges from $10 to $30 depending on the package.
Andrews ¶ 6.  Users could make this payment through PayPal or through other forms of
payment, including Steam and Amazon gift card keys.  Compl. ¶ 10; Andrews Decl. ¶ 3.

## III.    DEFENDANT'S DEFAULT

Take-Two contacted Defendant prior to bringing this lawsuit in an attempt to settle the
parties' dispute without requiring judicial intervention.  Compl. ¶ 3.  Take-Two demanded that
Defendant cease his willful and infringing conduct and cooperate with Take-Two to determine
whether settlement would be possible.  *Id.*  As part of this process, Take-Two requested financial
documents from Defendant that would show how much Defendant profited from the Infringing
Program.  Declaration of Dale M. Cendali, Esq., dated December 4, 2018 ("Cendali Decl.") ¶ 12.
Defendant stopped responding to Take-Two, leading to Take-Two's understanding that
Defendant would continue to infringe Take-Two's rights.  Compl. ¶ 3.

Take-Two filed this action on August 22, 2018.  Compl.  Take-Two continued to request
Defendant's financial documents from Defendant in an effort to avoid serving the Complaint.
Cendali Decl. ¶ 12, Ex. D.  Take-Two requested these documents at least **ten times**.  *Id.*  On
September 18, 2018, Defendant was served personally with the Summons, Complaint, and
related papers; proof of service was filed on September 26, 2018.  *Id.* ¶ 8, Ex. B.  Defendant

- 4 -

failed to respond to the Complaint.  *Id.* ¶ 9.  Thus, on November 20, 2018, Take-Two requested a

Certificate of Default, resulting in the Clerk's Certificate on November 21.  *See* Dkts. 17–19;

Cendali Decl. ¶ 10, Ex. C.

## ARGUMENT

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default

judgment.  *See City of N.Y.*, 645 F.3d at 128–29.  ***First***, under Federal Rule of Civil Procedure

55(a), the clerk must enter a notation of default when a party fails to defend.  Here, Take-Two

has obtained a Certificate of Default from the Clerk.  Cendali Decl. Ex. C.  ***Second***, upon

obtaining a clerk's notation of default, "a plaintiff must next seek a judgment by default under

Rule 55(b)."  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).[2]  The balance of this brief

addresses this latter step.

## I.     THIS COURT HAS JURISDICTION OVER TAKE-TWO'S CLAIMS

This Court has federal question subject matter jurisdiction over Take-Two's copyright

claim pursuant to 28 U.S.C. §§ 1331 and 1338.  *See Zipperer*, 2018 WL 4347796, at *2.[3]

Personal jurisdiction and venue are proper because Defendant was required to

affirmatively accept the terms of Take-Two's User Agreement and the Terms & Conditions of

Take-Two's Terms of Service ("Terms of Service") multiple times as a pre-requisite to accessing

or playing GTAV, both of which contain a forum selection clause designating New York as the

---

[2]     Federal Rule 55(b)(2), in tandem with Local Rule 55.2(b) and this Court's Individual Rules and Practices for Default Judgments, set forth certain procedural prerequisites that must be met before a default judgment may be entered.  These include: (1) a signed Clerk's certificate of default; (2) a copy of the pleadings; (3) proposed form of default judgment; and (4) an affidavit in support of the motion.  *See* L.R. 55.2(b); Court's Default Judgment Procedure; Fed. R. Civ. P. 55(b)(2).  Here, the record shows that Take-Two has met the procedural requirements because it has submitted a declaration with the required information, a proposed default judgment order, copies of the pleadings, and the Clerk's Certificate of Default.

[3]     This Court also has supplemental jurisdiction over Take-Two's state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are substantially related to Take-Two's federal claims.

sole and exclusive venue for litigation.  Compl. ¶¶ 11–22, Exs. 1–2.  In *Zipperer*, the defendant

challenged Take-Two's forum selection clause in Take-Two's User Agreement, and the court

rejected that challenge, finding that the defendant "consented to [the] court's jurisdiction" when

defendant accepted Take-Two's User Agreement to play GTAV.  *Zipperer*, 2018 WL 4347796,

at *3–4.  The same reasoning should apply here.  Moreover, Defendant, by his default, admits

that he consented.  *See City of N.Y.*, 645 F.3d at 137.

## II.    DEFAULT JUDGMENT SHOULD BE AWARDED

### A.    Take-Two's Well-Pleaded Complaint Establishes Defendant's Direct and Contributory Copyright Infringement

"A claim of copyright infringement . . . requires proof that (1) the plaintiff had a valid

copyright in the work allegedly infringed and (2) the defendant infringed the plaintiff's copyright

by violating one of the exclusive rights that 17 U.S.C. § 106 bestows upon the copyright holder."

*Island Software & Comput. v. Microsoft*, 413 F.3d 257, 260 (2d Cir. 2005).

As to the first prong, Take-Two owns the copyrights to the creative expression in GTAV.

Compl. ¶ 25; *see Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 139 (2d Cir.

1998) (discussing the creative expression in plaintiff's work).  Moreover, it owns a U.S.

copyright registration for GTAV.  Compl. ¶¶ 26–27, Ex. 3.  As its registration was issued within

five years of GTAV's publication, Compl. Ex. 3, it is "prima facie evidence of both valid

ownership of copyright and originality," raising a presumption of validity.  *Associated Press v.

Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 549 (S.D.N.Y. 2013); *see also* 17 U.S.C.

§ 410(c); *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012).

Moreover, GTAV is a creative, original video game.  Compl. ¶¶ 28, 42, 52.

As to the second prong, the Infringing Program infringes Take-Two's copyrights in two

ways.  ***First***, the Infringing Program creates unauthorized derivative versions of GTAV.  Take-

Two holds the exclusive right "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2).  Unauthorized computer programs that add new features to a video game or other software like the Infringing Program infringe this right.  For example, in *Take-Two Interactive Software, Inc. v. Zipperer*, a case involving a computer program that similarly "created an alternative version of GTAV which is based on Take-Two's GTAV but with added elements that allow its users to use features not available in the original version of GTAV" was held to "likely constitute[] a derivative work which Take-Two has the exclusive right to create." No. 18 Civ. 2608, 2018 WL 4347796, at *8 (S.D.N.Y. Aug. 16, 2018).  Similarly, in *Midway Manufacturing Co. v. Artic International, Inc.*, the Seventh Circuit affirmed enjoining a defendant that created a version of the *Galaxian* video game that operated at a higher speed than authorized by the game developer, because doing so created a derivative work and infringed the developer's copyrights.  704 F.2d 1009, 1013 (7th Cir. 1983).  And in *Micro Star v. Formgen Inc.*, the Ninth Circuit held that the defendant's video game package of "user-created levels" was a derivative work, because the alterations, when applied to Micro Star's video game, relied on the story and creative elements of the original game.  154 F.3d 1107, 1112 (9th Cir. 1998).[4]

Here, Defendant's Infringing Program infringes Take-Two's derivative work right by adding unauthorized elements to GTAV's multiplayer feature GTAO.  Compl. ¶¶ 1–2, 32, 37, 67; Andrews Decl. ¶¶ 4, 7.  By adding such additional user elements without Take-Two's authorization, Defendant's Infringing Program clearly infringes Take-Two's copyrights for the reasons discussed above.  17 U.S.C. § 106(2); *see also Castle Rock*, 150 F.3d at 135 (affirming permanent injunction against derivative work).

---

[4]   *See also Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002) (holding that the defendant's alteration of a copy of the plaintiff's software to add additional features created an infringing derivative work).

***Second***, because use of the Infringing Program violates the licensing conditions in Take-Two's User Agreement, playing GTAV after having violated those terms is no longer licensed and, thus, an infringement.  Running a computer program requires a reproduction for purposes of copyright law, because it creates a copy in the random access memory (RAM) of the user's computer.  As a result, a license is required to operate a computer program or video game software.  *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517 (9th Cir. 1993).  In recognition of this fact, software developers and video game publishers like Take-Two license their legitimate users the right to operate their programs, but they also condition their licenses on certain terms.  *See, e.g., Vernor v. Autodesk, Inc.*, 621 F.3d 1102 (9th Cir. 2010).  When the terms of the license are violated, the use is no longer licensed, resulting in copyright infringement.  *See Zipperer*, 2018 WL 4347796, at *8 (S.D.N.Y. Aug. 16, 2018) (Take-Two's "user agreement authorized [defendant] to run GTAV on his computer provided that he complied with the terms of that agreement which included a prohibition on modifying the program and creating derivative works based on the program.  By creating [the Infringing Program] he likely violated the terms of the user agreement.  His continued use of GTAV, and the copies on his computer each time he ran the program, are thus likely beyond the scope of his license from Take-Two and constitute infringement").[5]

Here, the Complaint alleges that the license to use GTAV is conditioned on adherence to Take-Two's User Agreement.  Compl. ¶¶ 30–31, 33, 45.  Among other things, it prohibits the creation of derivative works and cheating.  *Id.*  Of particular relevance to this case, the User Agreement states that the license is conditioned on the user agreeing (1) "not to . . . prepare

---

[5]   *See also Vernor*, 621 F.3d at 1112 (holding that unlicensed operation of software violates copyright holder's reproduction right).

derivative works based on, or otherwise modify the Software, in whole or in part," (2) "not to . . . restrict or inhibit any other user from using and enjoying any online features of the Software," and (3) "not to . . . cheat . . . or utilize any unauthorized robot, spider, or other program in connection with any online features of the Software."  Compl. ¶ 30, Ex. 1.  The Infringing Program does all of these prohibited things.  Compl. ¶¶ 1–2, 32, 37, 67.  As a result, by setting up and allowing others to play the Infringing Program, which is itself unlicensed, Defendant's use constitutes copyright infringement.  *See Zipperer*, 2018 WL 4347796, at *8; *Vernor*, 621 F.3d at 1112; *Touro Coll.*, 2017 WL 4082481, at *12 n.15.

* * *

In addition to Defendant's own direct liability, he also is contributorily liable for the same infringement by the Infringing Program's users because Defendant (a) had knowledge that the users he distributed the Infringing Program to were creating derivative works of GTAV and (b) contributed to such use by providing them with the means to engage in infringement (*i.e.*, the Infringing Program).  Compl. ¶¶ 51–63; *see EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99–100 (2d Cir. 2016) (rejecting defendant's challenge to jury finding of contributory infringement and noting that "[a] contributory infringer is 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another'").

 Accordingly, Defendant has infringed Take-Two's copyrights in two, distinct ways both directly and contributorily.  Take-Two respectfully requests that default judgment be granted on Counts I and II of the Complaint.  *See, e.g.*, *McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 501 (S.D.N.Y. 2018) (granting motion for default judgment where plaintiff alleged defendant's instructor solutions manual were derivative works).

**B.    Take-Two's Well-Pleaded Complaint Establishes Defendant's Liability for**

## Breach of Contract and Tortious Interference With Contract

A breach of contract claim is established under New York law where there is "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *See Muench Photography, Inc. v. McGraw-Hill Cos.*, No. 12 Civ. 6595, 2013 WL 5372785, at *3 (S.D.N.Y. Aug. 15, 2013).

Here, the Complaint alleges that "Take-Two's User Agreement is a valid and enforceable contract." Compl. ¶ 65. It further alleges that "Take-Two has fully performed or tendered all performance required under the User Agreement." *Id.* ¶ 66. It alleges that "Defendant has breached his obligations under the User Agreement by (1) altering GTAV and creating derivative works based on it; (2) restricting and inhibiting others from using and enjoying GTAV; and/or (3) cheating and using unauthorized programs in connection with GTAV's online features." *Id.* ¶ 67. And the Complaint alleges Take-Two has been damaged as a result of Defendant's conduct. *Id.* ¶¶ 1–2, 9, 38, 68. These allegations establish Defendant's liability for breach of contract. *See Muench*, 2013 WL 5372785, at *4.

A tortious interference with contract claim also is established in cases like this one where the defendant "induced or intentionally procured other players' breach of the user agreement." *Zipperer*, 2018 WL 4347796, at *6 (Take-Two adequately stated tortious interference with contract claim where Take-Two alleged that "other players breached their user agreement with Take-Two by using the cheat programs that [defendant] made and sold" and that defendant "induced and continues to induce other GTAV players to breach their user agreements with Take-Two by creating and selling the cheat programs to them"); *see also Ullmannglass v. Oneida, Ltd.*, 86 A.D.3d 827, 829, 927 N.Y.S.2d 702, 705 (3d Dep't 2011) (holding that a tortious interference with contract claim is established where a "valid contract existed which a third party knew about, the third party intentionally and properly procured the breach of the

- 10 -

contract and the breach resulted in damage to the plaintiff").

Here, "Mr. Perez has induced . . . other GTAV players to breach their contractual responsibilities by using the Infringing Program for purposes expressly prohibited by the User Agreement." Compl. ¶ 73. Moreover, "Mr. Perez's actions in inducing these breaches of contract are intentional, illegal, and have been engaged in for the specific purpose of inducing the GTAV players using the Infringing Program to breach their agreements with Take-Two." *Id.* ¶ 74. These allegations thus are sufficient to establish Defendant's tortious interference with contract. *Zipperer*, 2018 WL 4347796, at \*6; *Ullmannglass*, 86 A.D.3d at 829.

Accordingly, default judgment is proper on Take-Two's breach of contract and tortious interference with contract claims. *See e.g.*, *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619 (S.D.N.Y. 2011); *Schmid, Inc. v. Zucker's Gifts, Inc.*, 766 F. Supp. 118, 123 (S.D.N.Y. 1991).

## III.   DEFENDANT SHOULD BE PERMANENTLY ENJOINED

In addition to entry of default judgment, Take-Two respectfully requests that the Court permanently enjoin Defendant from further infringement in accordance with Take-Two's proposed order submitted herewith. The Copyright Act provides that a federal court has the power to issue "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "[P]ermanent injunctions are generally granted where liability has been established and there is a threat of continuing infringement." *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 319 (E.D.N.Y. 2007). Where a defendant defaults, courts will infer that the defendant "is willing to continue its infringement." *Hounddog Prods.*, 826 F. Supp. 2d at 633.

To obtain a permanent injunction, Take-Two must "satisfy the traditional four-factor test" by demonstrating (1) "success on the merits," (2) "irreparable injury in the absence of an

injunction," (3) the balance of hardships tips in [its] favor," and (4) the "public interest would not

be disserved" by the issuance of an injunction. *McGraw-Hill*, 323 F. Supp. 3d at 500 (quoting

*Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)).  For the reasons explained below, each

of these factors weighs in favor of the issuance of a permanent injunction.

### A.    Success on the Merits

For the reasons explained above, Take-Two has succeeded on the merits of its copyright

infringement, breach of contract, and tortious interference with contract claims.  *See supra* 6–11.

### B.    Take-Two Has Been Irreparably Harmed

A permanent injunction is available where the plaintiff "will suffer irreparable harm if an

injunction is not issued."  *McGraw-Hill*, 323 F. Supp. 3d at 499.  "Harm might be irremediable,

or irreparable, for many reasons, including that a loss is difficult to replace or difficult to

measure, or that it is a loss that one should not be expected to suffer."  *Hounddog Prods.*, 826 F.

Supp. 2d at 632 (citation omitted).  The Complaint alleges that Take-Two has been irreparably

harmed.  Compl. ¶¶ 1, 37–40, 48, 61.  In particular, Take-Two is irreparably harmed by

Defendant's actions in three separate ways.

*First*, courts find irreparable harm where a plaintiff would lose control over the plan for

its copyrighted work.  *See, e.g.*, *McGraw-Hill*, 323 F. Supp. 3d at 499–500 (irreparable harm

found where plaintiffs would be prevented from "controlling the distribution of their products

and recovering associated profits").

Defendant's Infringing Program causes Take-Two to lose control over Take-Two's plan

for how GTAV's multiplayer feature GTAO is designed to be played.  *McGraw-Hill*, 323 F.

Supp. 3d at 499–500.  By adding features such as teleporting, the creation of objects, and other

unauthorized features, Defendant has altered Take-Two's work for himself in disregard of Take-

Two's User Agreement and copyrights, to exploit GTAV for his own economic advantage.

- 12 -

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (irreparable harm found where defendant's infringing conduct "would dilute plaintiffs' . . . control over their product").  Take-Two expends countless hours to create innovative, popular games.  Compl. ¶ 28.  If everyone were allowed to alter GTAV for profit, it would cause significant harm to Take-Two, its carefully crafted game model, and incentives to develop new games.  Losing control over how GTAV is designed to be played is a quintessential example of a company losing control over its copyrighted works and its statutorily granted right to exploit such works to its own commercial advantage.  *See McGraw-Hill*, 323 F. Supp. 3d at 499–500.

**Second**, courts "routinely find the harm suffered by plaintiffs in copyright cases to be 'irreparable' on the theory that . . . diminished reputation can be difficult if not impossible to measure."  *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 195 (S.D.N.Y. 2016) (granting permanent injunction); *see also Ideavillage Prod. Corp. v. Bling Boutique Store*, No. 16 Civ. 9039, 2018 WL 3559085, at *5 (S.D.N.Y. July 24, 2018) ("irreparable injury to the reputation of [plaintiff's] products" supported permanent injunction).

Here, the unlimited availability of Defendant's Infringing Program will cause untold, irreparable harm to the reputation of Take-Two because Take-Two's business depends on maintaining a positive reputation among video game consumers and ensuring users continue to enjoy playing and purchasing Take-Two video games.  Andrews Decl. ¶ 8.  Defendant's Infringing Program interferes with the enjoyment of Take-Two's game by consumers who have not installed the Infringing Program.  *Id.*  And consequently, Take-Two's reputation for maintaining the integrity of its gaming environment will be harmed, discouraging users from future purchases and game play.  *See Midway Mfg. Co. v. Artic Int'l, Inc.*, 547 F. Supp. 999, 1014 (N.D. Ill. 1982) (irreparable harm found where defendant's "speed-up kit" altered

- 13 -

plaintiff's game in a way that made it "considerably more difficult, for the unskilled player in particular" and where it was "very possible, if not likely, that that [would] discourage those individuals from playing [plaintiff's] video games"), *aff'd*, 704 F.2d 1009.

Once consumers decide to stop playing GTAV or stop buying Take-Two products, it will be very difficult to un-ring that bell.  Consumers who purchased GTAV in the past to play GTAO may never return to the game in the future.  Andrews Decl. ¶ 11.  And this harm ultimately affects Take-Two's business model, customer relations, and the gaming industry.  *Id.* ¶ 10; *Adv. Access v. Content Sys. Licensing Adm'r, LLC v. Tao*, 689 F. App'x 661, 662 (2d Cir. 2017) (irreparable harm found where defendant was "undermin[ing plaintiff's] business model"); *WPIX*, 691 F.3d at 285 (irreparable harm found where defendant's television streaming program would "drastically change the industry, to plaintiffs' detriment").  Thus, an injunction to stop the disruption and alteration of the game experience is essential.  *See Midway*, 547 F. Supp. at 1015.

***Finally***, courts find harm irreparable where there would be a "significant undercutting of [plaintiff's] price points." *MPD Accessories B.V. v. Urban Outfitters*, No. 12 Civ. 6501, 2014 WL 2440683, at *10 (S.D.N.Y. May 30, 2014).  Here, as part of Take-Two's game, users can choose to enhance their gaming experience through the use of certain items, but users must either earn the currency through gameplay or users must purchase the currency and items from Take-Two.  Compl. ¶ 32; Andrews Decl. ¶ 9.  With Defendant's Infringing Program, gamers can have unlimited digital currency and other items for the low price of $10, $20, or $30, currency and items which would otherwise need to be earned or purchased from Take-Two.  Andrews Decl. ¶¶ 3, 9.

In *Zipperer*, the court found irreparable harm and granted an injunction holding that "cheat programs [that] allow users to get unlimited currency without purchasing it from Take-

Two . . . undermines Take-Two's pricing model." *Zipperer*, 2018 WL 4347796 at *9. Thus, here, the unlimited digital currency and other items made available by Defendant's Infringing Program similarly circumvents Take-Two's normal processes, and undermines Take-Two's business model and the pricing of its currency and in-game items. *See also MPD*, 2014 WL 2440683, at *10; *see also Adv. Access Content Sys. Licensing Adm'r, LLC v. Tao*, 689 F. App'x 661, 662 (2d Cir. 2017) (affirming injunction and finding of irreparable harm where defendant's action would allow users to circumvent encryptions on plaintiff's software thereby "undermin[ing plaintiff's] business model"). Purchases of legitimate currency and other items from Take-Two are important to Take-Two's business, as such purchases support the continued development of high-quality, state of the art video games. Andrews Decl. ¶ 9; *see WPIX*, 691 F.3d at 285 (irreparable harm found where quantity and quality of efforts to create new works would be diminished by defendant's conduct, as would the value of new works).[6]

*   *   *

In sum, Defendant's Infringing Program has caused immediate, untold harm to Take-Two's business and the value of its copyrights, and deprived Take-Two of the control over its copyrighted software. This harm cannot be corrected through mere damages. Accordingly, permanent injunctive relief is proper. *Hounddog Prods.*, 826 F. Supp. 2d at 619.

## C.     The Balance of Hardships Favors Take-Two

In assessing whether the balance of hardships weighs in favor of granting a preliminary

---

[6]     Moreover, monetary damages are insufficient to compensate Take-Two for the harm it has suffered and will suffer if Defendant's infringements continue. The damages that Take-Two will suffer cannot be quantified readily, as damages are notoriously difficult to calculate in copyright infringement cases. *Zipperer*, 2018 WL 4347796 at *9; *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("[C]ourts have tended to issue injunctions in this context because 'to prove the loss of sales due to infringement is . . . notoriously difficult.'"). Take-Two would have no way of knowing how much revenue it will lose as a result of Defendant's Infringing Program. Andrews Decl. ¶ 11; *Zipperer*, 2018 WL 4347796 at *9; *Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 411 (S.D.N.Y. 2011), *aff'd*, 462 F. App'x 31 (2d Cir. 2012); *BMI*, 158 F. Supp. 3d at 195.

injunction, "courts must balance the competing claims of injury and must consider the effect on each party of granting or withholding the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). For example, where "the absence of an injunction would result in the continued infringement of [a copyright holder's] property interests in the copyright material," it supports granting an injunction. *See WPIX*, 691 F.3d at 287. By contrast, losing the opportunity to infringe the copyright holder's content does not weigh against granting an injunction. *See Rovio Entm't Ltd. v. Allstar Vending Ltd.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) (finding balance of hardships tipped in plaintiff's favor where defendant's only harm was losing the chance to copy plaintiff's copyrighted video games).

As noted above, the harm to Take-Two is substantial. *See supra* 12–15; Compl. ¶¶ 1, 37–40, 48, 61; Andrews Decl. ¶¶ 6–11. In contrast to the harm that Take-Two will suffer, Defendant's only "harm" from Take-Two's requested injunctive relief is that he will no longer be able to infringe GTAV and reap the profits from doing so. But the Second Circuit has made clear that a defendant "cannot be legally harmed by the fact that it cannot continue" infringing a plaintiff's copyrighted work, "even if this ultimately puts [the defendant] out of business." *WPIX*, 691 F.3d 287; *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 197 (S.D.N.Y. 2009) ("loss of the ability to engage in unauthorized conduct and the concomitant business opportunities that such activities provide" did not constitute hardship).[7] All that Defendant risks losing is the ability to infringe Take-Two's copyrights, which is not a legally cognizable harm. Accordingly, the balance of the hardships favors entry of Take-Two's

---

[7] *See also Zipperer*, 2018 WL 4347796, at *11 (balance tipped in Take-Two's favor where defendant identified no injury he would suffer if an injunction issued and noting that "[i]n any event, a defendant does not suffer a legal harm by the fact that it cannot continue to infringe on the plaintiff's copyright"); *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982) (finding that balance of hardships did not weigh against entry of preliminary injunction where defendant's "only alleged hardship is the profits it would lose if enjoined" from marketing defendant's infringing video game).

proposed injunction.

**D.      The Public Interest Will be Served by the Issuance of an Injunction**

In this case, the public will be served by the issuance of injunctive relief for multiple

reasons.  ***First***, in *Zipperer*, the court found that there is a strong public interest in protecting

"legitimate users of GTAV [who] are harmed by programs such as [Defendant's Infringing

Program] that permit . . . users to disadvantage players who do not use the cheat programs and

give to their users unlimited digital currency with which to purchase added features that GTAV's

legitimate users do not have access to or must purchase from Take-Two."  2018 WL 4347796, at

\*11; *see also generally Midway*, 547 F. Supp. at 1015 (granting injunction against defendant's

infringing "speed-up" kits that "alter[ed] the play of [plaintiff's] game").  Gamers will still be

able to play GTAV, but they must do so in a manner consistent with Take-Two's User

Agreement to avoid disruptive gameplay.  *WPIX*, 691 F.3d at 288 (public interest not harmed by

granting an injunction where "the public will still be able to access plaintiff's programs through

means other than defendant's services").

***Second***, "the public's interest in protecting Take-Two's investment in creating video

games is promoted by issuing the requested injunction."  *Zipperer*, 2018 WL 4347796, at \*11.

*Warner Bros. Entm't v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) (strong public

interest in "prevent[ing] the misappropriation of the skills, creative energies, and resources which

are invested in the protected work").  Take-Two invests considerable resources in creating some

of the most cutting-edge games in the world, including GTAV.  Compl. ¶ 28.  The public

benefits by ensuring that Take-Two's investment is protected and that Take-Two is able to

continue to invest in new, fun games for the public.  *See Kirtsaeng v. John Wiley & Sons, Inc.*,

136 S.Ct. 1979, 1982 (1975) (Copyright Act's purpose is to encourage "and reward" innovation).

***Third***, beyond creating additional incentives for production, the public has an additional

interest in ensuring that creators maintain the integrity of their works by "secur[ing] the rights of [their] creative activity." *Kurt S. Alder, Inc. v. World Bazaars, Inc.*, No. 95 Civ. 5610, 1995 WL 457991 at *1 (S.D.N.Y. 1995).  The Copyright Act is designed not only to incentivize creation, but also to ensure that creators are able to reap the benefits of their creation without fear of free-riding or misappropriation, while maintaining the creative integrity over their work.  *See Midway*, 547 F. Supp. at 1015 (noting that "[t]he Copyright Act evidences a public interest in creativity by demonstrating an intent to provide an economic reward for creative expression").

Defendant's unauthorized Infringing Program deprives Take-Two of both the benefits of its creative works and the ability to control how its game is designed to be played.  Andrews Decl. ¶ 7.  This is contrary to the policies underlying the Copyright Act and undermines the public interest in promoting these policies.  The public interest clearly favors issuance of an injunction.

## IV.   STATUTORY DAMAGES FOR DEFENDANT'S COPYRIGHT INFRINGEMENT SHOULD BE AWARDED

Take-Two has elected to recover statutory damages for copyright infringement pursuant to 17 U.S.C. § 504(c).  For the reasons explained further below, Take-Two respectfully requests that the Court award the statutory maximum of $150,000.  17 U.S.C. § 504(c)(2).

Statutory damages under the Copyright Act "serves two purposes—compensatory and punitive." *Richard Feiner and Co., Inc. v. Passport Int'l Prods., Inc.*, No. 97 Civ. 9144, 1998 WL 437157, at *2 n.13 (S.D.N.Y. July 31, 1998).  "Where a defendant has acted willfully, 'a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others.'" *See Hounddog Prods.*, 826 F. Supp. 2d at 631.

The Copyright Act permits a maximum award of $150,000.00 in statutory damages for

willful infringement.  17 U.S.C. § 504(c)(2).  As Your Honor has acknowledged, "[t]he Court, in exercising its discretion to determine statutory damages, considers factors including '(1) the infringer's state of mind; (2) the expenses saved, and profits earned by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperating in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *John Wiley & Sons, Inc. v. Williams*, No. 12 Civ. 0079, 2012 WL 5438917, at *2 (S.D.N.Y. Nov. 5, 2012) (Castel, J.).  In cases "where the infringer fails to appear," however, courts recognize that "[m]any of these factors are . . . impossible to consider."  *Jordan Mozer & Assocs., Ltd. v. Starck*, No. 13 Civ. 1181, 2014 WL 1327960, at *2 (S.D.N.Y. Apr. 3, 2014).  In such circumstances, "[r]ather than rewarding infringers . . . courts 'draw[ ] every reasonable inference on these points against defendants." *Id.* Moreover, where a defendant has defaulted, "the complaint's allegations of willfulness can be taken as true."  *Dweck v. Amadi*, No. 10 Civ. 2577, 2011 WL 3809907, at *4 (S.D.N.Y. July 26, 2011) (collecting cases), *R&R adopted,* No. 10 Civ. 2577, 2011 WL 3809891 (S.D.N.Y. Aug. 29, 2011); *see also Hounddog Prods.*, 826 F. Supp. 2d at 631 ("Courts frequently infer willfulness where a defendant defaults.").  Each of the factors outlined in *John Wiley* favors issuance of maximum damages.

*First*, Take-Two pleaded in its Complaint that Defendant's "infringement of Take-Two's copyrights has been deliberate, willful and in utter disregard of Take-Two's rights."  Compl. ¶¶ 46, 59; *see also id.* ¶¶ 1, 3–5, 38, 50, 63.  Because Defendant has defaulted, Take-Two's allegations of willfulness are accepted as true.  *Dweck*, 2011 WL 3809907, at *4; *Hounddog Prods.*, 826 F. Supp. 2d at 631.

Moreover, with respect to Defendant's state of mind, his cooperation in providing

evidence concerning the value of the infringing material, and his conduct and attitude—*i.e.*
Factors One, Five, and Six—Defendant repeatedly refused Take-Two's requests to produce his
financial documents, documents which would have shown the value of Defendant's Infringing
Program.  Cendali Decl. Ex. D.  Indeed, Take-Two requested that Defendant provide Take-Two
with those documents on no less than **ten occasions** in an attempt to resolve this dispute without
court intervention.  *See generally id.*  Yet, Defendant ignored Take-Two's correspondence and
never provided the documents.  *Id.* ¶¶ 12–13.  Defendant's "disregard demonstrates an attitude of
blatant indifference" that is willful and places "particular emphasis" on "the conduct and attitude
of the parties" prong.  *See Broad. Music, Inc. v. The Living Room Steak House, Inc.*, No. 14 Civ.
6298, 2016 WL 756567, at *6 (E.D.N.Y. Feb. 26, 2016) (willfulness established where plaintiff
"was in constant and one-sided communication with the [d]efendants" who "did not respond to
any of [plaintiff's] correspondence"), *R&R adopted sub nom. Broad. Music, Inc. v. Living Room
Steak House, Inc.*, No. 14 Civ. 06298, 2016 WL 1056609 (E.D.N.Y. Mar. 17, 2016); *Broad.
Music, Inc. v. Wexford INR LLC*, No. 12 Civ. 1253, 2014 WL 4626454, at *11 (N.D.N.Y. Sept.
15, 2014) (defendants' "culpable state of mind" and "general strategy of delay and
noncompliance . . . weigh[ed] in favor of awarding Plaintiffs' requested statutory damages").

  ***Second***, with respect to the profits earned by the infringer—*i.e.* Factor Two—because
Defendant failed to appear, Take-Two has been unable to conduct discovery to ascertain
Defendant's sales and profits from his Infringing Program, documents which are in Defendant's
control.  And with respect to the revenue lost by the copyright holder—*i.e.* Factor Three—for the
reasons explained above, the harm to Take-Two's business is irreparable and difficult to
quantify.[8]  *See supra* 15.  Although damages are difficult to calculate, Take-Two has estimated

---

[8] Moreover, GTAV "is of great value to Take-Two" and it "was the product of Take-Two's skills, resources, and

that it has been harmed "at a minimum, $500,000.00." Compl. ¶¶ 38, 50. Nevertheless, the
absence of such evidence does not impair Take-Two's entitlement to statutory damages. *See
Jordan Mozer & Assocs.*, 2014 WL 1327960, at *2 (awarding $150,000 in statutory damages
where defendant failed to appear); *Tu v. TAD Sys. Tech. Inc.*, No. 08 Civ. 3822, 2009 WL
2905780, at *6 (E.D.N.Y. Sept. 10, 2009) (awarding $150,000 in statutory damages even though
"[b]ecause of Defendants' default in this matter, the Court ha[d] almost no evidence to adjudge
[actual damages]"); *Arista Records LLC v. Usenet.com, Inc.*, No. 07 Civ 8822, 2010 WL
3629688, at *5 (S.D.N.Y. Feb. 2, 2010) (awarding statutory damages where plaintiffs
"established direct harm to their business by Defendants' infringing conduct—even if such harm
is not easily quantified"), *R&R adopted,* No. 07 Civ 8822, 2010 WL 3629587 (S.D.N.Y. Sept.
16, 2010).[9]

    ***Third***, with respect to the deterrent effect on the infringer and third parties—*i.e.* Factor
Four—a maximum award would deter Defendant and other infringers from creating similar
cheating tools that modify and alter GTAV. *BMI.*, 2014 WL 4626454, at *11 ("deterrent effect"
that statutory damages would have on defendants and third parties "weigh[ed] in favor of
awarding Plaintiffs' requested statutory damages"); *Dweck*, 2011 WL 3809907, at *5 (statutory
damages appropriate to "deter similar infringements in the future"). Indeed, Defendant is not
alone in his effort to create, distribute, and maintain a program that alters and modifies Take-

---

creative energies." Compl. ¶ 28.

[9]    *See also Dweck*, 2011 WL 3809907, at *3 (awarding statutory damages where plaintiff was unable to conduct
discovery to ascertain defendants' actual financial benefit due to defendants' failure to appear and the harm to
plaintiff was "the risk of alienating plaintiff's customer base"); *Pearson Educ., Inc. v. Nugroho*, No. 08 Civ.
8034, 2009 WL 3429610, at *5 (S.D.N.Y. Oct. 27, 2009) ("[T]he copyright owner may elect to recover
statutory damages, instead of actual damages and defendant's profits. He may, moreover, make such an election
regardless of the adequacy of the evidence offered as to his actual damages and the amount of defendant's
profits, and even if he has intentionally declined to offer such evidence, although it was available."), *R&R
adopted,* No. 08 Civ. 8034, 2009 WL 4884098 (S.D.N.Y. Dec. 16, 2009).

Two's game, which is then sold to users for profit.  Take-Two already has been forced to bring several lawsuits in the United States and around the world against other infringers.  *See, e.g.*, *Zipperer*, 2018 WL 4347796, at *1; *Take-Two Interactive Software, Inc. v. Cameron*, No. 18 Civ. 02981 (S.D.N.Y.).[10]  In one such case, the defendant "secretly started developing and distributing [a new] program" after Take-Two had informed him that operating his original program "violated the terms of his user agreement and infringed Take-Two's copyright." *Zipperer*, 2018 WL 4347796, at *10.  Accordingly, an award of $150,000 in statutory damages "as a deterrent not only to the current Defendant, but as a general deterrent to others who may contemplate engaging in [similar] infringing behavior in the future" is appropriate.  *See Elec. Creations Corp. v. Gigahertz, Inc.*, No. 12 Civ. 1423, 2013 WL 3229125, at *6 (N.D.N.Y. June 25, 2013) (awarding maximum statutory damages); *see also Arista*, 2010 WL 3629688, at *6 (awarding statutory damages where it was "well documented that Defendants [were] not alone in their pursuit" to infringe plaintiffs' works on the Internet and noting "the need to deter future infringers" was "great").

**Finally**, courts routinely award maximum statutory damages, or at a minimum, an award at the higher end of the range of permissible damages, including in cases where the defendant defaults.  *See e.g.*, *Jordan Mozer & Assocs., Ltd.*, 2014 WL 1327960, at *2 ($150,000 in statutory damages appropriate where defendant defaulted); *Hounddog Prods.*, 826 F. Supp. 2d at 632 (same); *Tu*, 2009 WL 2905780, at *6 (same).[11]

---

[10]   *See also Take-Two Interactive Software, Inc. v. James*, Claim No. IL-2018-000094, High Court, Chancery Division; *Take-Two Interactive Software, Inc. v. Anderson* (Federal Court of Australia, No. NSD1751/2018); *Take-Two Interactive Software, Inc. v. Daldal,* Landgericht Hamburg (District Court Hamburg), 312 O 198/18; *Take-Two Interactive Software, Inc. v. Daldal,* Landgericht Köln (District Court Cologne), 14 O 182/18; *Take-Two Interactive Software, Inc. v. Arnolfo,* No. 24057/2018 (Court of Turin); *Take-Two Interactive Software, Inc. v. Muška*, No. 23Nc 52/2018 (KS Brno); *Take-Two Interactive Software, Inc. v. Paulík*, No. 46Nc 2007/2018 (KS Plzeň); *Take-Two Interactive Software, Inc. v. McCormick*, No: A247/18, Intellectual Property Court, Court of Session.

[11]   *See also Entral Grp. Int'l, LLC v. Honey Cafe on 5th, Inc.*, No. 05 Civ. 2290, 2006 WL 3694584, at *6

Thus, in light of Defendant's willful infringement, Take-Two's "well-established and highly valuable copyright," the need for deterrence, and Defendant's "refus[al] to litigate [his] infringement such that it would be possible to calculate actual damages," Take-Two respectfully requests that the Court award maximum statutory damages of $150,000. *Brighton*, 2017 WL 7833608, at *5; *see also Jordan Mozer & Assocs., Ltd.*, 2014 WL 1327960, at *2; *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999) (then-maximum statutory damages "justified" in light of defendant's willfulness and "statutory goal of deterrence").

## V.    TAKE-TWO'S ATTORNEY'S FEES SHOULD BE AWARDED

In addition to statutory damages, Take-Two seeks to recover $69,686.95 in attorney's fees that it accrued through November 30, 2018. The Copyright Act permits an award of reasonable attorney's fees to the prevailing party. 17 U.S.C. § 505. "A court deciding whether to award fees . . . may consider, among other things, 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Broad. Music, Inc. v. Pamdh Enterprises, Inc.*, No. 13 Civ. 2255, 2014 WL 2781846, at *5 (S.D.N.Y. June 19, 2014) (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n.19 (1994)). Where the defendant has acted willfully, an award of attorney's fees is "justified" and "in line with the statutory goal of deterrence." *Kepner-Tregoe*, 186 F.3d at 289. A defendant's "default weighs in favor of such an award." *Sands v. Hologram USA Networks, Inc.*, No. 17 Civ. 09692, slip op.

---

(E.D.N.Y. Dec. 14, 2006) (same); *Elec. Creations*, 2013 WL 3229125, at *6 (same); *Brighton Collectibles, LLC v. IPPO Jewelry Corp.*, No. 16 Civ. 06065, 2017 WL 7833608, at *5 (C.D. Cal. Feb. 22, 2017) (same); *Blizzard Entm't, Inc. v. Vankuipers*, No. 10 Civ. 1495, 2011 WL 13225129, at *3 (C.D. Cal. July 11, 2011) (same); *MDM Grp. Assocs., Inc. v. L.A. Real Estate*, No. 10 Civ. 0234, 2010 WL 5239250, at *2 (S.D. Ala. Dec. 14, 2010) (same); *DisputeSuite.com, LLC v. Credit Umbrella Inc.*, No. 14 Civ. 6340, 2016 WL 6662722, at *6 (C.D. Cal. Apr. 25, 2016) (same); *Am. Bd. of Internal Med. v. Mittman*, No. 08 Civ. 929, 2010 WL 11520544, at *3 (C.D. Cal. Dec. 6, 2010) (same), *aff'd,* 543 F. App'x 680 (9th Cir. 2013); *Lions Gate Films Inc. v. Saleh*, No. 214 Civ. 06033, 2016 WL 6822748, at *5 (C.D. Cal. Mar. 24, 2016) (same).

at 4 (S.D.N.Y. Oct. 1, 2018) (Castel, J.); *see also Jordan Mozer*, 2014 WL 1327960, at *3.

Here, Defendant's motivation, unreasonableness, and deterrence all support an award of attorney's fees. ***First***, Take-Two "tried diligently to protect [its] interests without resort to litigation," repeatedly advising Defendant that it needed Defendant's records of his profits to resolve the litigation without court intervention. *BMI*, 2014 WL 2781846, at *5 (awarding attorney's fees where defendant ignored plaintiffs' efforts to to enter a licensing agreement); Cendali Decl. Ex. D. Indeed, Take-Two first requested those records in April 2018 and followed up in its request no less than ten times, forcing Take-Two to file this lawsuit when those documents were not provided. *Id.* ***Second***, "[d]eterrence supports awarding fees . . . given Defendant[']s disregard for [Take-Two's] copyrights" and that Take-Two's efforts to resolve this dispute "have been ignored." *BMI*, 2014 WL 2781846, at *5. ***Third***, Defendant's "objective unreasonableness . . . is evidenced by [his] failure to even appear in this suit." *Id.* An award of attorney's fees is thus appropriate.

When determining "reasonableness" of the requested attorney's fee, courts start with the "lodestar" method, multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See City of Burlington v. Dague*, 505 U.S. 557, 559 (1992); *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). "To determine what constitutes a 'reasonable' hourly rate, courts are to consider the 'prevailing market rates in the relevant community.'" *Regeneron Pharm., Inc. v. Merus N.V.*, No. 14 Civ. 1650, 2018 WL 3425013, at *3 (S.D.N.Y. June 25, 2018). "In order to calculate the reasonable hours expended, the . . . fee application must be supported by contemporaneous time records, affidavits, and other materials." *Id.*

Here, Take-Two's request for attorney's fees is based on the reasonable time billed and charged at the reasonable hourly rates of Kirkland's attorneys, paralegal, and support staff.

Take-Two has adequately supported its claim for attorney's fees by submitting an attorney declaration, time records, and a statement regarding each attorney's individual billing rate. Cendali Decl. ¶ 17, Ex. E.   Moreover, courts in this District have held that Take-Two's law firm, Kirkland & Ellis LLP, has a "reasonable" partner and associate billing rate.  *See Regeneron*, 2018 WL 3425013, at *6 (granting defendant's motion for attorneys' fees).  Rates that are comparable to Kirkland also have been found reasonable in this District.  *See e.g.*, *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, No. 16 Civ. 8103, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (finding associate billing rates of $569-$753 per hour and partner billing rates of $874-$1,048 were "reasonable" rates for a litigation that was "not particularly complex").  Various billing reports show that Kirkland's billing rates are comparable to its peer law firms for similar services.  Cendali Decl. Exs. G, H.  Moreover, the fact that Take-Two's fees and rates reflected in documentation were actually negotiated and billed to Take-Two also is strong evidence of reasonableness.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) ("The reasonable hourly rate is the rate a paying client would be willing to pay."); *Anderson v. YARP Rest., Inc.*, No. 94 Civ. 7543, 1997 WL 47785, at *2 (S.D.N.Y. Feb. 6, 1997) ("The best evidence of a reasonable fee rate is the amount actually charged by counsel.").  Thus, Take-Two's attorney's fees are reasonable, and it respectfully requests reimbursement in full.

## CONCLUSION

For the foregoing reasons, Take-Two respectfully requests that this Court grant Take-Two's motion for default judgement against Defendant Jhonny Perez, permanently enjoin Defendant, and award $150,000 in statutory damages and $69,686.95 in attorney's fees.

Dated:  New York, New York
      December 4, 2018

*/s/ Dale M. Cendali*

Dale M. Cendali
Joshua L. Simmons
Megan L. McKeown
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
megan.mckeown@kirkland.com

*Attorneys for Plaintiff*
*Take-Two Interactive Software, Inc.*